IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JERMAINE MITCHELL, #205893, )
)
     Plaintiff, )
)
     v. )     CASE NO. 2:11-CV-1101-WHA
)     [WO]
)
SCOTT ROUSE, et al., )
)
     Defendants. )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Jermaine Mitchell ("Mitchell"), a paraplegic state inmate confined to a wheelchair, challenging removal of word processing functions from the computer in the law library at the Hamilton Aged and Infirmed Facility ("Hamilton").  Mitchell also alleges that this adverse action and a subsequent denial of a request for copies of state law occurred in retaliation for his filing a previous civil rights complaint and this case. In addition, Mitchell asserts that the defendants conspired against him to violate his rights. The defendants named in this case are Scott Rouse, Anne A. Hill, Bart Harmon, Katherine S. Jessip, and Al Butler, attorneys for the Alabama Department of Corrections, and Kim Thomas, Commissioner for the Alabama Department of Corrections.  Mitchell seeks a declaratory judgment and injunctive relief. *Amended Complaint - Doc. No. 4* at 6.

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing the plaintiff's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as a motion for summary judgment.  *Order of April 17, 2012 - Doc. No. 22*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the plaintiff's response and documents filed in support of the response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered

substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Mitchell is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Anderson*, 477

U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position

will not suffice; there must be enough of a showing that the [trier of fact] could reasonably

find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91

L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).

Conclusory allegations based on subjective beliefs are likewise insufficient to create a

genuine dispute of material fact and, therefore, do not suffice to oppose a motion for

summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A

plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence,

are insufficient to withstand summary judgment.");  *Harris v. Ostrout*, 65 F.3d 912, 916

(11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing

beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman*

*v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own

conclusory allegations is not sufficient to oppose summary judgment....");  *Evers v. General*

*Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without

specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set

forth specific facts supported by requisite evidence sufficient to establish the existence of

an element essential to his case and on which the plaintiff will bear the burden of proof at

trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record .... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will

not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute

of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d

667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this

court's disregard of elementary principles of production and proof in a civil case.  The

court has undertaken a thorough and exhaustive review of all the evidence contained in the

record.  After such review, the court finds that Mitchell has failed to demonstrate a genuine

dispute of material fact in order to preclude entry of summary judgment.  *Matsushita*,

*supra*.

### III.  DISCUSSION[2]

Mitchell alleges that in November 2011, during his confinement at Hamilton, the

defendants ordered the removal of the word processing functions from the computer in the

law library.  *Amended Complaint - Doc. No. 4* at 3.  Mitchell maintains that this action

denied him the right of access to the courts and constituted a violation of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., as it deprived him of one

method by which to prepare and print legal documents.  *Id*. at 1-3.  Mitchell also alleges

that this action occurred in retaliation for his filing a prior federal civil rights action

addressing conditions of confinement in the state prison system.  *Id*. at 4.  In an amendment

---

[2]The court limits its review to the allegations set forth in the amended complaint and amendment thereto filed by Mitchell.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 Fed. App'x 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (district court correctly refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

to the complaint, Mitchell further complains that the defendants continued to retaliate against him by failing to update the computer with "new case law rulings" and refusing to provide him copies of the Alabama Correctional Incentive time in act form rather than statute form. *Amendment to the Complaint - Doc. No. 19* at 2. Finally, Mitchell asserts that each of the actions about which he complains occurred as the result of a conspiracy among the defendants.

The defendants deny each of the plaintiff's claims for relief. Specifically, defendants Thomas, Rouse, Harmon, Jessip and Butler aver that they had no involvement, direct or otherwise, with the removal of word processing functions from the law library computer at Hamilton. *Defendants' Exhibit C to the Special Report - Doc. No. 17-3*, *Defendants' Exhibit D to the Special Report - Doc. No. 17-4*, *Defendants' Exhibit E to the Special Report - Doc. No. 17-5*, *Defendants' Exhibit F to the Special Report - Doc. No. 17-6* and *Defendants' Exhibit H to the Special Report - Doc. No. 17-8*. Defendant Hill, however, acknowledges that in November of 2011 she "did approve the request by our [Information Technology] Department to remove all unauthorized software from all law library computers across the state [as] computers placed in the institution [are] for the sole purpose of conducting legal research." *Defendants' Exhibit G to the Special Report - Doc. No. 17-7* at 1. During the relevant period of time, Henry M. Redden served as the Director of Information Technology for the Alabama Department of Corrections. Mr. Redden explains

that the decision to remove all unauthorized software from the law library computers occurred upon his department's receipt of a notification advising that "the provider of legal research material was changing [to LexisNexis] and the replacement software would need to be installed on the law library equipment. Prior to this request, there had been occurrences of unauthorized and unlicensed software being loaded on this equipment. The law library equipment is for the sole purpose of inmate legal research." *Defendants' Exhibit L to the Supplemental Special Report - Doc. No. 21-2* at 1-2. To complete the software transition, a member of the Information Technology Department was "required [to make] a site visit to each institution with a law library system ... to upgrade the research material. With this requirement, it was determined that we would reload the equipment with the new law research product and only approved software as defined by the ADOC Legal Division. In addition, we secured the administration of the equipment to the point that only Information Systems' staff can add or update the software. Information Systems is notified of updates to the research material. At that point, technicians are dispatched to update the systems." *Id*. at 2. LexisNexis furnishes updated material on a quarterly basis and this information is downloaded to the institutional computer systems at this time. *Id*.; *Defendants' Exhibit K to the Supplemental Special Report - Doc. No. 21-1*.

The only probative evidence before the court demonstrates that defendants Thomas, Rouse, Harmon, Jessip and Butler were not involved with the decision to remove word

processing programs from the law library computer systems.  The evidentiary materials further demonstrate that defendant Hill was the sole defendant with any involvement in the challenged action, as she approved the removal of unauthorized and/or unlicensed word processing programs from the computer systems within the law libraries.  In addition, the undisputed evidentiary materials establish that, throughout his confinement at Hamilton, Mitchell has been allowed access to the law library and afforded the opportunity to ask inmate law clerks for assistance with conducting research and preparing legal documents. *Defendants' Exhibit B to the Special Report - Doc. No. 17-2* at 1 ("[T]he facility has inmate law library workers that are required to help other inmates according to their needs.  Inmate Mitchell was advised in March of 2010 that if he needed assistance, help would be provided.").

### A.  Lack of Standing - Claims Alleged on Behalf of Other Inmates

"[A] litigant may only assert his own constitutional rights or immunities." *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction).  "The essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the

illumination of difficult constitutional questions[.]'  *Baker v. Carr*, 369 U.S. 186, 204, 82

S.Ct. 691, 703 7 L.Ed.2d 663 (1962)."  *Saladin v. City of Milledgeville*, 812 F.2d 687, 690

(11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

 Standing involves two aspects. The first is the minimum "case or controversy"

constitutional requirement of Article III. *Saladin*, 812 F.2d at 690. "To satisfy this

'irreducible' constitutional minimum required for standing, a litigant must show 1) that he

personally has suffered an actual or prospective injury as a result of the putatively illegal

conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the

injury is likely to be redressed through court action."  *Saladin*, 812 F.2d at 690, citing

*Valley Forge Christian College v. Americans United for Separation of Church and State*,

454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  If any element is

lacking, a plaintiff's claim is not viable.  Second, the Supreme Court has established

several standing requirements based on prudential considerations. *Saladin*, 812 F.2d at 690

(internal citations omitted) ("The Supreme Court has also stated that, in addition to these

essential constitutional requirements, a court should consider the case in light of three

principles which might counsel judicial constraint, referred to as 'prudential'

considerations.... Those considerations are 1) whether the plaintiff's complaint falls within

the zone of interests protected by the statute or constitutional provision at issue; 2) whether

the complaint raises abstract questions amounting to generalized grievances which are

more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

The instant complaint contains claims alleging violations of the rights of other physically handicapped inmates.  In accordance with applicable federal law as set forth herein, Mitchell lacks standing to assert the constitutional rights of other persons. *Saladin*, *supra.*; *Allen v. Wright*, 468 U.S. 737, 751 (1984).  The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person. With respect to the claims arising from alleged violations of other inmates' constitutional rights, Mitchell is not "asserting [his] ... own legal rights and interests [but] rather ... the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690. These claims therefore entitle Mitchell to no relief and summary judgment on such claims is due to be granted in favor of the defendants.

## B.  Conspiracy

Mitchell alleges that the defendants conspired against him to take the actions about which he complains. This claim entitles Mitchell to no relief.

"Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. at 27, 101 S.Ct. at186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581,

584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement...." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants.... For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey*, 949 F.2d at 1133.

The defendants deny they conspired with each other to violate Mitchell's constitutional rights or federal law. The court has carefully reviewed the pleadings filed by Mitchell. He has offered no evidence to support his theory that the defendants engaged in various conspiratorial acts against him. Specifically, Mitchell has failed to present any

evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, Mitchell's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy between the defendants. *Harvey*, 949 F.2d 1133; *Fullman*, 739 F.2d at 556-557.  Thus, Mitchell failed to produce any probative evidence of a conspiracy and the motion for summary judgment filed by the defendants is due to be granted regarding this claim. *Bailey*, 956 F.2d at 1122.

### C.  Respondeat Superior

Anne Hill, General Counsel for the Alabama Department of Corrections, is the only defendant who in any manner participated in the decision regarding the programs which would be available on law library computer systems.  Specifically, Ms. Hill approved the request by IT personnel to remove all unauthorized software from the law library computer systems. *Defendants' Exhibit G to the Special Report - Doc. No. 17-7* at 1.  Thus, the claims against the remaining defendants entitle Mitchell to no relief as these claims are based on theories of respondeat superior and vicarious liability.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed.

203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for actions of defendant Hill could attach to the other named defendants only if these defendants

"personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Mitchell, however, has presented no evidence which would create a genuine issue of disputed fact with respect to the claims lodged against defendants Thomas, Rouse, Harmon, Jessip and Butler.  The only probative evidentiary materials filed in this case demonstrate that these defendants did not personally participate in or have any involvement with the claims on which Mitchell seeks relief.  In light of the foregoing, defendants Thomas, Rouse, Harmon, Jessip and Butler can be held liable for actions of defendant Hill only if their actions bear a causal relationship to the purported violations of Mitchell's constitutional  rights and federal law.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Thomas, Rouse, Harmon, Jessip and Butler, Mitchell must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [these defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [these defendants] directed [defendant Hill or other officials] to act unlawfully, or knew that [she/they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations

17

omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Mitchell has failed to meet this burden.

The record before the court contains no evidence to support an inference that defendants Thomas, Rouse, Harmon, Jessip or Butler directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action.  In addition, Mitchell has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which these defendants failed to take corrective action. Finally, it is clear that the challenged actions did not occur pursuant to a policy enacted by Thomas, Rouse, Harmon, Jessip or Butler.  Thus, a causal connection does not exist between the actions challenged by Mitchell and the conduct of these defendants, and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of defendants Thomas, Rouse, Harmon, Jessip and Butler.

### D.  Lack of Word Processing Programs

Mitchell alleges that defendant Hill approved the removal of word processing programs--i.e., word pad, note pad, my documents, etc.-- from the computer in the law library at Hamilton.  Mitchell alleges that this action violated his right of access to the courts and the ADA because it deprived him of one manner--that is, the use of a computer-- in which to compose and print documents for submission to the courts.

18

1. <u>Access to Courts</u>.  The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials.  *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***....  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further stated that *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires."  *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect,

without a showing of actual injury, presented a claim sufficient to confer standing. *Id*. at

349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an

inmate's capability to present claims. 518 U.S. at 356. "*Bounds* ... ***guarantees no***

***particular methodology but rather the conferral of a capability -- the capability of***

***bringing contemplated challenges to sentences or conditions of confinement before the***

***courts***. When any inmate ... shows that an actionable claim of this nature which he desired

to bring has been lost or rejected, or that the presentation of such a claim is currently being

prevented, because this capability of filing suit has not been provided, he demonstrates"

the requisite actual injury. *Lewis*, 518 U.S. at 356 (emphasis added). Finally, the Court

discerned that the injury requirement is satisfied only when an inmate has been denied "a

reasonably adequate opportunity to file nonfrivolous legal claims challenging [his]

convictions or conditions of confinement.... ***[I]t is that capability, rather than the***

***capability of turning pages in a law library, that is the touchstone***." *Id*. at 356-357

(emphasis added). "[T]he Constitution does not require that prisoners ... be able to conduct

generalized research, but only that they be able to present their grievances to the courts -

a more limited capability that can be produced by a much more limited degree of legal

assistance." *Id*. at 360. The Court admonished that federal courts should allow prison

officials to determine the best method of ensuring that inmates are provided a reasonably

adequate opportunity to present their nonfrivolous claims of constitutional violations to the

20

courts. *Id*. at 356.  A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

Mitchell presents only a conclusory allegation of a constitutional violation and fails to establish that lack of computer word processing programs deprived him of the capability to pursue non-frivolous claims before this or any other court. Federal law does not guarantee a "particular methodology" such as computer word processing programs or typewriters to provide access to the courts. *Lewis*, 518 U.S. at 356.  Moreover, even if Mitchell did not have access to a word processing program, it is undisputed that, while at Hamilton, he had unfettered access to the law library, the ability to conduct legal research on the computer, which contained the LexisNexis database, and access to inmate law clerks for assistance with researching legal references and/or preparing written legal documents. The evidence further demonstrates that no defendant in no way inhibited Mitchell's preparation of legal documents, filing of pleadings or processing of any cause of action.

An exhaustive review of relevant state and federal court records establishes that Mitchell retained his ability to access the courts during the period of time made the basis of this case.  During this time, Mitchell not only initiated the instant civil action, but also filed (1) *Mitchell v. Thomas, et al.*, 2:11-CV-474-TMH-SRW (M.D. Ala), transferred to

the Northern District of Alabama, *Mitchell v. Thomas, et al.*, Civil Action No. 6:11-CV-4105-SLB (N.D. Ala. 2012) (good time credit and conditions claims summarily dismissed pursuant to 28 U.S.C. § 1915(b)); (2) *Mitchell v. Pearce*, Civil Action No. 6:12-CV-1152-AKK-SGC  (N.D. Ala. 2014) (majority of claims dismissed pursuant to 28 U.S.C. § 1915(b) and retaliation claim subsequently dismissed upon motion of plaintiff); and (3) *Mitchell v. Wynne, et al.*, Civil Action No. 2:12-CV-249-WHA-SRW (M.D. Ala.) (pending). In addition, Mitchell  litigated several actions in the state courts. Throughout the proceedings in the instant case and his other case pending before this court, Mitchell has demonstrated that he is both proficient and prolific at presenting and arguing the claims of his choice to the court of his choosing without using a word processing program. The challenged lack of access to a word processing program did not improperly impede Mitchell's efforts to pursue nonfrivolous legal claims.

Mitchell has failed to come forward with any evidence that the actions about which he complains deprived him of the *capability* of pursuing non-frivolous claims in this or any other court.  In addition, Mitchell does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356.  Defendant Hill is therefore entitled to summary judgment on the access to courts claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show he had been denied the capability to pursue nonfrivolous legal claims); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (An inmate

is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage" regarding the capability of pursuing legal relief.).

    2.  <u>The ADA Claim</u>.[3]  Mitchell claims that lack of a computer word processing program violated his rights under the ADA.  "Under Title II of the ADA, a 'qualified individual with a disability' cannot be excluded from participating in, or be denied the benefits of, services, programs, or activities of a public entity 'by reason of such disability' or 'be subjected to discrimination by' the public entity.  *See* 42 U.S.C. § 12132." *Flournoy v. Culver*, 534 Fed. Appx. 848, 851 (11th Cir. 2013).  Title II of the ADA applies to inmates confined in state correctional facilities. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1081 (11th Cir. 2007) (It is well settled law "that a disabled prisoner can state a Title II ADA claim if he is denied participation in an activity provided in state prison by reason of his disability.").[4]

---

[3]For purposes of this Recommendation, the court assumes *arguendo* that Mitchell is a qualified individual with a disability.

[4]In *United States v. Georgia*, 546 U.S. 151, 152-154 (2006), the Court advised:
> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.).  A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2).  The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," §12131(1).

> "In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citation omitted). This standard derives from the ADA's language, stating that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual." 42 USC 12112(a)....

*Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263-1264 (11th Cir. 2007).

Defendant Hill denies violating any rights afforded Mitchell regarding his ability to access the courts.  It is undisputed that Mitchell had continued access to the law library, and was allowed to receive assistance from inmate law clerks to aid in conducting research or composing legal documents.  Consequently, the record is devoid of evidence to show that the denial of a word processing program excluded Mitchell from use of the law library or access to the courts.  Moreover, Mitchell has failed to show that the decision to remove unauthorized word processing programs from the computers maintained in the prison system's law libraries occurred due to his disability.  *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1332, 1334 (11th Cir. 1999) (plaintiff must present evidence the disability constituted a determinative factor in the decision-making process); *see also McNely v. Ocala-Star Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (the ADA liability standard requires proof that the decision at issue occurred because of the alleged disability).  Instead, the probative evidence before the court demonstrates that removal of the word

24

processing software transpired because the software was unauthorized and/or unlicensed for use on the computer system.  Thus, Mitchell's ADA claim provides no basis for relief

### E.  First Amendment Claims - Retaliation

Mitchell alleges that defendant Hill approved removal of the word processing software, denied him access to state law regarding correctional incentive time and refused to update case law in retaliation for his filing federal civil rights actions.  Defendant Hill denies these allegations and argues that the actions about which Mitchell complains did not occur in retaliation for Mitchell's exercise of any constitutionally protected right.

The evidentiary materials demonstrate that defendant Hill approved the removal of word processing programs from law library computers as the software at issue was unauthorized.  *Defendants' Exhibit G to the Special Report - Doc. No. 17-7* at 1.  The evidentiary materials further establish that defendant Hill did not participate in the denial of written copies to Mitchell of the proposed legislative acts underlying the Alabama Correctional Incentive Time Act ("ACITA"), *Ala. Code* § 14-9-40, *et seq. Defendants' Exhibit M to the Supplemental Special Report - Doc. No. 21-3* at 1.  It is likewise undisputed that Mitchell had access to the codified statutes via the LexisNexis system utilized at Hamilton.  Finally, the evidentiary materials indicate that law library computers are updated by members of the IT staff when relevant information is received from LexisNexis, usually at quarterly intervals.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)].  As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.'  *Id.*, at 404-405, 94 S.Ct., at 1807.  Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987).  Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

 "In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.  Thus, while inmates

retain a constitutional right protected by the First Amendment to freely exercise their right of access to the courts, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order. The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right [protected by the First Amendment]." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v. Procunier*, 417 U.S. 817,

94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights.  417 U.S. at 821."  *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).  "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.'  *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted)....   [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest."  *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory

conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Mitchell alleges that defendant Hill retaliated against him for exercising his right of access to the courts, thus satisfying the first element of his retaliation claim. *Smith*, 532 F.3d at 1277. The second element requires Mitchell to demonstrate that these adverse actions "would likely deter a [prisoner] of ordinary firmness" from filing legal actions. *Id*. This "presents an objective standard and a factual inquiry." *Id*. However, nothing before this court indicates that the challenged actions would deter an ordinary inmate from filing lawsuits. In addition, the records of this and other courts establish that these actions had no deterrent effect on Mitchell, as he continued to file legal actions routinely. Even assuming *arguendo* that this standard has been met, Mitchell fails to satisfy the third element of a retaliation claim -- a causal connection between his constitutionally protected activity and the adverse actions of defendant Hill. The causal connection inquiry focuses

on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendants were subjectively motivated to" undertake the challenged actions against Mitchell for his engaging in legal activities. *Smith*, 532 F.3d at 1278.   The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983).   This is [necessary because prisoners'] ...  claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.   This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized

[by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse action of the defendant. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendant to show that he "would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4...." *Smith*, 532 F.3d at 1278 n.22.

Defendant Hill denies the allegations of retaliation and avers that Mitchell's legal

activities played no role in the challenged actions. The evidentiary materials contained in the record indicate that the adverse actions about which Mitchell complains did not occur due to retaliation against Mitchell for filing this or any other lawsuit. Instead, the challenged actions occurred because (1) the word processing software was either unauthorized or unlicensed, and (2) the requested material was available to Mitchell through use of the research tools contained in the law library. Nothing before the court indicates that defendant Hill intended to retaliate against Mitchell. Mitchell offers only his conclusory allegations of ultimate fact that defendant Hill retaliated against him for exercising his right of access to the courts. These allegations are insufficient to defeat summary judgment. *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.

Moreover, even if a reasonable fact finder could infer the motivating factor element, it is clear under *Mt. Healthy* that defendant Hill would have taken the challenged actions regardless of Mitchell's accessing the court. In light of the foregoing, defendant Hill is entitled to summary judgment on the First Amendment claims, as Mitchell fails to establish by appropriate evidence either the likeliness of deterring future legal actions or a causal relationship between the alleged protected activities and the adverse actions taken against him, each of which is a required for a retaliation claim. *Id*. at 1278-1279.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 23, 2015, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

DONE, this 9th day of February, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE